IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 2030 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| COOK COUNTY, OFFICE OF THE | ) | |
| SHERIFF OF COOK COUNTY, | ) | |
| THOMAS DART, in his individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his Eighth Amendment rights. The case is before the Court on defendants' Federal Rule of Civil Procedure 56 motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## Facts

At all times relevant to this suit, the Office of the Sheriff of Cook County has been responsible for the administration and management of Cook County Jail ("Jail"). (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1.) At all times relevant to this suit, Cook County has owned and operated Cermak Hospital, which is on the premises of the Jail and provides medical care to the inmates and detainees held there. (*Id.* ¶ 2.)

Plaintiff is a pretrial detainee at the Jail. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 1.) On April 24, 2010, he broke his wrist while playing basketball. (*Id.* ¶ 3; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 45.) The doctor on duty that day, Dr. Gawo, stabilized plaintiff's wrist in an Ace bandage and a

sling and filled out a "Consultation Request Form" asking for plaintiff to be referred to an orthopedic specialist "ASAP." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 9-10; Defs.' Ex. 4, Gawo Dep. at 46-47; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 51.)

On April 30, 2010, plaintiff filed a grievance asking to see an orthopedist. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 57-58.) On May 4, 2010, the grievance was referred to Cermak. (*Id.* ¶ 60.)

On May 10, 2010, sixteen days after plaintiff was injured, he saw an orthopedist, Dr. Mejia, who put plaintiff in a long arm cast, *i.e.*, one that went from his wrist to above his elbow. (Defs.' Ex. 2, Mejia Dep. at 30-32.) Dr. Mejia testified that the long arm cast was the standard of treatment for a wrist fracture and that sixteen days was not, given plaintiff's injury, too long to have waited to apply it. (*Id.* at 31-36.) Dr. Mejia indicated that he wanted to see plaintiff again in two to three weeks to put him in a short arm cast. (*Id.* at 45.)

Three weeks later, on June 1, 2010, plaintiff was put in a short arm cast, and told to follow up in three weeks. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 68-69.)

On June 11, 2010, the Jail responded to plaintiff's April 30, 2010 grievance, stating "[s]een 5/11/10 in primary care clinic. Continuing to research ortho clinic schedule." (Pl.'s Ex. F, Grievance Resp.) On June 14, 2010, plaintiff appealed the response, saying: "I have swelling in my fingers and I can barely move them." (*Id.*, Req. Appeal.) The Jail accepted the appeal: "CHS Admin., Please ensure this issue has or is being adequately addressed." (*Id.*)

On June 22, 2010, plaintiff saw an unidentified practitioner whose notes say, "awaiting ortho." (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 71-72.)

On July 26, 2010, plaintiff filed another grievance, which states: "It's been 3 months [since I broke my wrist] and I have very limited movement in fingers and I have not been seen by ortho in

2

approx. 2 months. I am not receiving proper medical care or treatment regarding this matter." (Pl.'s Ex. I, Grievance.)

On August 3, 2010, plaintiff saw Dr. Baker, a family practitioner, whose notes state "Still in cast . . . . Spoke to Laura in scheduling. Patient will be added for tomorrow to ortho." (Defs.' Ex. 6, Baker Dep. at 8, 58-60.)

On August 5, 2010, the Jail responded to plaintiff's July 26, 2010 grievance, saying: "Seen 8/3/10 in [Primary Care Clinic] - next appointment 8/10/10." (Pl.'s Ex. I, Grievance Resp.)

On August 10, 2010, plaintiff again saw Dr. Baker whose notes state: "[Plaintiff] was scheduled for ortho last night, but apparently not taken by security" and "cast needs to come off!" (Defs.' Ex. 6, Baker Dep. at 63; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 99.)

On August 10, 2010, plaintiff appealed the Jail's response to his July 26 grievance, saying: "They still haven't removed my cast and I still can't move fingers properly." (Pl.'s Ex. I, Grievance Req. Appeal.)

On August 12, 2010, almost ten weeks after plaintiff's short arm cast had been put on, Dr. Kapotas, an orthopedist, removed it. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 110; Defs.' Ex. 3, Kapotas Dep. at 12.) Dr. Kapotas testified that he normally does not keep a patient in a cast for ten weeks, rather, "as a general rule[,] casting [is] about six to eight weeks." (Defs.' Ex. 3, Kapotas Dep. at 60-61.) Dr. Kapotas recommended that plaintiff be sent to occupational therapy "for range of motion exercises" and return in a month. (*Id.* at 62, 64.)

On August 27, 2010, plaintiff filed a grievance that states:

I had my cast removed 8-12-10. I was scheduled for therapy on 8-27-10. I was taken to Cermak but was not seen by therapist. I can barely move my fingers and wrist. I cannot make a fist or turn my palm upright. I am and have been receiving very poor care regarding this injury. I still have pain in wrist. I have wrote several grievances

3

regarding this matter. I need immediate therapy to try to restore use of my left hand and wrist.

(Pl.'s Ex. K, 8/27/10 Grievance.)

Plaintiff was scheduled for therapy on August 30, and September 6, 2010, but for reasons not disclosed by the record, he was not taken to Cermak. (Defs.' Resp. LR 56.1(b)(3)(C) Stmt. ¶ 125.)

On September 30, 2010, the Jail accepted plaintiff's appeal of his July 26, 2010 grievance, saying: "CHS admin., please ensure that detainee's ongoing issues(s) are or have been addressed appropriately." (Pl.'s Ex. I, Req. Appeal.)

On October 4, 2010, the Jail responded to plaintiff's August 27, 2010 grievance, stating: "Per Div. Physician, patient will be rescheduled for therapy." (Pl.'s Ex. K, Grievance Resp.) On October 12, 2010, plaintiff appealed, saying: "I had my judge to make a court order because my medical needs are being totally neglected. This is my 3rd grievance." (*Id.*, Req. Appeal.) On November 9, 2010, the Jail denied the appeal: "Per CHS Admin seen/therapy 9/13 - 10/25 - 10/27." (*Id.*)

On November 3, 2010, two and one-half months after his first visit, plaintiff again saw Dr. Kapotas. (Defs.' Ex. 3, Kapotas Dep. at 64.) Dr. Kapotas again recommended occupational therapy. (*Id.* at 65.) An x-ray taken on that date showed that the bones in plaintiff's wrist were "diffusely osteopenic," *i.e.*, have a whitish appearance, suggesting loss of density, and there were "[m]ild changes" in the radiocarpal joint, *i.e.*, "there is some arthritis or the joint space is not as normal." (*Id.* at 83-84.)

On August 13, 2013, Dr. Fetter, plaintiff's orthopedic expert, examined him and concluded that plaintiff has "residual and permanent stiffness of his left hand and wrist," which was, "more likely than not, caused by the prolonged cast immobilization." (Pl.'s Ex. Q, 10/2/13 Fetter Report at 7.)

4

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Exhaustion**

The Sheriff's Office contends that plaintiff failed to exhaust administrative remedies with respect to his claims against it, as he is required to do before filing suit, *see* 42 U.S.C. § 1997e(a), because his grievances do not allege improper conduct by correctional officers. The Court disagrees. Though the Sheriff's Office has delegated inmate and detainee health care to Cermak, the Sheriff retains the ultimate responsibility for ensuring that such care is provided. *Cf. Estelle v. Gamble*, 429 U.S. 97, 103 (1989) (stating that "the government[] [has an] obligation to provide medical care for those whom it is punishing by incarceration."); *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services."). Thus, the fact that plaintiff did not grieve "correctional" issues does not shield the Sheriff's Office from his claims.

**Merits**

In Counts I, and III, and V,[1] respectively, plaintiff alleges that Cook County and the Sheriff's Office violated his Eighth Amendment rights. To defeat defendants' motion on this claim, plaintiff must offer evidence that suggests each defendant has a practice or policy of being deliberately indifferent to detainees' objectively serious medical needs and plaintiff was injured as a result. *Monell v. Dep't of Soc. Servs. City of N.Y.*, 436 U.S. 658, 694 (1978); *Estelle*, 429 U.S. at 104-05. A policy, in this context, includes a widespread practice that is so well settled and permanent that it constitutes a custom with the force of law. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). The alleged policy here is defendants' disregard of the pervasive problems with the medical record keeping, appointment scheduling, and grievance procedures at Cermak and the Jail that prevented detainees from obtaining adequate health care.

To support his policy allegations, plaintiff relies in part on: (1) a July 11, 2008 letter from the U.S. Department of Justice to the Cook County Board President and the Sheriff of Cook County reporting the findings of its investigation of the Jail pursuant to the Civil Rights of Institutionalized Persons Act; (2) an Agreed Order entered in the lawsuit that arose from the investigation; and (3) the June 2010 report of Dr. Ronald Shansky, one of the monitors appointed pursuant to the Agreed Order to ensure that its provisions were implemented. (*See* Pl.'s Ex. B, Letter from Becker & Fitzgerald to Stroger & Dart (July 11, 2008); Pl.'s Ex. C, 5/31/10 Agreed Order, *United States v. Cook Cnty.*,

---

[1] Count III, which is asserted against the Office of the Sheriff of Cook County and Count V, which is asserted against Sheriff Dart in his official capacity, are identical claims. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quotation omitted).

*Ill.*, No. 10 C 2946 (N.D. Ill.); Pl.'s Ex. D, Monitor Ronald Shansky, M.D.'s First Compliance Report.) Defendants contend that all three documents are inadmissible.

The letter, defendants argue, is inadmissible because it is beyond the scope of plaintiff's personal knowledge, it is hearsay, and it is more prejudicial than probative. The first contention is easily dispatched as plaintiff need only have personal knowledge about the matters to which he testifies, not about all of the evidence he offers in opposition to defendants' motion. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Whether the letter is inadmissible hearsay is a closer question. Federal Rule of Evidence ("Rule") 803(8) excludes from the hearsay rule "[a] record or statement of a public office [that] . . . sets out . . . factual findings from a legally authorized investigation," a description that seems to fit the letter. *See* Fed. R. Evid. 803(8); (Pl.'s Ex. B, Letter from Becker & Fitzgerald to Stroger & Dart (July 11, 2008) ("We write to report the findings of the investigation of Civil Rights Division and the United States Attorney's Office into conditions at the Cook County Jail ('CCJ') . . . . pursuant to the Civil Rights of Institutionalized Persons Act . . . . [, which] gives the Department of Justice authority to seek a remedy for a pattern or practice of conduct that violates the constitutional rights of inmates in adult detention and correctional facilities.").) However, as the committee comments to Rule 803(8) note, the admissibility of such "'evaluative' reports" is "controversial," and courts consider "(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held . . . ; [and] (4) possible motivation problems," in determining whether to admit them. Fed. R. Evid. 803(8), cmt. c (citations omitted).

Here, these factors militate against admission of the letter. The letter was written two years before the events underlying this suit, it relies on unsworn hearsay statements from unidentified

inmates, the findings in it were rendered without a hearing and without defendants having had an opportunity to respond to the allegations in it, and it appears to have been prepared in anticipation of litigation. (*See generally* Pl.'s Ex. B, Letter from Becker & Fitzgerald to Stroger & Dart (July 11, 2008); *see also Bailey v. City of Chi.*, No. 08 C 4441, 2012 WL 850741, at *5 (N.D. Ill. Mar. 9, 2012) (refusing to admit the same letter because it "was prepared in anticipation of a lawsuit" and "based on unsworn interviews," "the DOJ did not conduct an evidentiary hearing," and "Cook County was not given an opportunity to respond before the . . . letter was sent"). Accordingly, the Court holds that the letter is not admissible under Rule 803(8).

Plaintiff also asks the Court to take judicial notice of the facts asserted in the Agreed Order. The Court can "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Orders from other court proceedings are judicially noticeable "'for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation.'" *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)). However, a court "cannot take notice of findings of fact from other proceedings for the truth asserted therein" unless the findings "satisfy the indisputability requirement of Fed. R. Evid. 201(b)." *Id.* The findings in the Agreed Order do not satisfy that requirement, as the Order expressly states:

> On July 11, 2008 the United States issued a findings letter pursuant to 42 U.S.C. § 1997 that concluded that certain conditions at [the Jail] violate the constitutional rights of individuals confined [there]. The findings letter and the conclusions therein are contested by Defendants. Furthermore, by entering into this Agreed Order, Defendants . . . do not waive the right to contest the July 11, 2008 findings letter or any of the conclusions set forth therein.
>
> . . . .

> For the purposes of this lawsuit only and in order to settle this matter, Defendants consent to the entry of a finding that the conditions at [the Jail] necessitate the remedial measures contained in this Agreed Order. . . .

(Pl.'s Ex. C, 5/31/10 Agreed Order ¶¶ 4, 7.) Therefore, the Court cannot take judicial notice of the facts set forth in the Agreed Order.

Plaintiff asks the Court to admit Dr. Shansky's report as a present sense impression under Federal Rule of Evidence 803(1). *See id.* (excluding from the hearsay rule, "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it"). However, "to qualify under the present sense impression exception" a statement "must describe an event or condition without calculated narration." *United States v. Boyce*, 742 F.3d 792, 797 (7th Cir.) (quotation omitted), *cert. denied*, 134 S. Ct. 2321 (2014). Because Dr. Shansky's report does not meet that requirement, it is not admissible under Rule 803(1).

Alternatively, plaintiff argues that all three documents are admissible to show that defendants were on notice of grievance and medical scheduling problems at Cermak and the Jail. Evidence that is offered for something other than the truth of the matter asserted, *e.g.*, to show notice or intent, is not hearsay. *See* Federal Rule of Evidence 801(c)(2). Thus, these documents are admissible to show that defendants knew the Department of Justice alleged that there were problems at the Jail. It is not, however, admissible for the truth of the matters asserted in the documents, *i.e.*, that there were problems at Cermak and the Jail.

Absent these documents, the evidence shows that the following was the grievance procedure followed by the Jail in 2010: (1) a correctional supervisor collected grievances from each division every weekday and turned them over to the division's correctional rehabilitation worker ("CRW"). (Def.'s Ex. 9, Mueller Dep. at 11-13, 50-51); (2) the CRW assigned each grievance a tracking number, logged it into a logbook and, if it was a healthcare grievance, delivered it to Cermak, which

responded to the grievance (*id.* at 14-17, 52-53); (3) the Jail had thirty days to respond to a non-emergency grievance and two days to respond to an emergency grievance, *i.e.*, a grievance rasing an issue of "immediate threat or harm to the inmate" (*id.* at 19, 27-28, 48-49, 55, 58); (4) an inmate had fourteen days after receiving the grievance response to appeal it (*id.* at 37); (5) the Jail had ten working days to respond to an appeal (*id.* at 60); and (6) "[t]he Jail was responsible for following up with Cermak if Cermak failed to respond within 30 days to a detainee grievance regarding healthcare" (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 40).

There is no dispute that this procedure was not followed for all of plaintiff's grievances. The record shows, for example, that the Jail did not respond to plaintiff's April 30, 2010 grievance until June 11, 2010, or to his June 14, 2010 appeal until July 9, 2010. (*See* Defs.' Ex. 10, 4/30/10 Grievance, Grievance Resp. & Req. Appeal.) It also shows that the Jail did not respond to his August 10, 2010 appeal of his July 26 grievance until September 30, 2010, to his August 27, 2010 grievance until October 5, 2010, and to his October 12, 2010 grievance appeal until November 9, 2010. (*See id.* 7/26/10 Grievance Req. Appeal; Pl.'s Ex. K, 8/27/10 Grievance, Grievance Resp. & Req. Appeal.) However, it also shows that the Jail timely responded to plaintiff's July 26, 2010, April 7, 2011, and June 12, 2011 grievances on August 5, 2010, April 23, 2011, and June 28, 2011, respectively. (*See* Defs.' Ex. 10, 7/26/10 Grievance & Grievance Resp; Pl.'s Ex. M, 4/7/11 Grievance & Grievance Resp; *id.*, 6/12/11 Grievance & Grievance Resp.) Viewed favorably to plaintiff, these facts suggest that defendants sometimes violated the grievance policy but not so pervasively as to support the inference that they have a practice of disregarding detainee grievances. Alternatively, plaintiff alleges that defendants' record keeping and scheduling practices were so inadequate that they deprived detainees of medical care. With respect to these practices, the record shows that in late 2010, the Jail and Cermak implemented a computer-based document management system, through

which Cermak doctors access a patient's treatment and progress notes, schedule future appointments, and request appointments with specialists. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 41-42, 77.) Before the system was in place, treatment notes were only in a paper chart that applied to multiple patients, so earlier notes pertaining to a particular patient were not always available to the next doctor who treated him. (*Id.* ¶¶ 43, 65, 82.) Moreover, before the system was installed, doctors made requests for appointments on paper or by phone and could not verify that an appointment had, in fact, been scheduled. (*Id.* ¶¶ 42, 73-74, 79.)

With respect to plaintiff, the record shows that Dr. Gawo, who saw plaintiff on April 24, 2010, the day of his injury, filled out a form requesting that plaintiff be referred to an orthopedist "ASAP." (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 51.) Sixteen days later, a length of time that Dr. Mejia said "[did]n't make any material difference in [plaintiff's] injury," he applied the long arm cast and said plaintiff should be seen again in two to three weeks. (*Id.* ¶ 61; Defs.' Ex. 2, Mejia Dep. at 35-36, 44-45.) Four weeks later, on June 10, 2010, an unidentified orthopedist put plaintiff in a short arm cast and requested that plaintiff return in three weeks. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 68-69.) Almost eight weeks later, on August 3, 2010, plaintiff saw a general practitioner, Dr. Baker, whose notes state: "Spoke with Laura in scheduling. Patient will be added for tomorrow to ortho." (*Id.* ¶¶ 92-93.) For reasons not disclosed by the record, plaintiff was not seen by an orthopedist the next day, or when he was scheduled to do so on August 9, 2010. (*Id.* ¶¶ 96-97.) On August 12, 2010, Dr. Kapotas removed plaintiff's short arm cast. (*Id.* ¶ 110.) Viewed favorably to plaintiff, this evidence suggests that defendants did not properly schedule the removal of plaintiff's short arm cast. It does not, however, support the inference that defendants had a policy or practice of failing to schedule detainees timely for medical care.

In short, the record does not suggest that defendants had a policy of being deliberately indifferent to detainees' medical needs. Thus, defendants are entitled to judgment as a matter of law on Counts I, III and V. Moreover, because success on Count IV, against Sheriff Dart in his individual capacity for his failure to correct the purportedly unconstitutional policies, and Count II, against the County as indemnitor of the Sheriff, depends on the success of Counts I, III and V, defendants are entitled to judgment on those claims as well.

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to plaintiff's claims against defendants, who are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motion for summary judgment [201] and terminates this case.

**SO ORDERED.**                                    **ENTERED: May 15, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**